*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAN RYAN, PAUL DRISCOLL, JOELLEN M. PISARCZYK, AND MYRON ZOLKEWSKY,

       Plaintiffs-Appellants,

v

SECRETARY OF STATE,

       Defendant-Appellee.

UNPUBLISHED
March 23, 2023

No. 360809
Court of Claims
LC No. 20-000198-MZ

Before: GADOLA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

Plaintiffs brought this action seeking declaratory and injunctive relief against defendant Secretary of State. Plaintiffs' claims are based upon their belief that defendant was failing in her duty to administer the elections laws. In particular, plaintiffs believe that defendant should have prevented local election officials from accepting private funds for use in administering the 2020, and future, elections. Plaintiffs specifically point to funds being distributed by a group known as the Center for Technology and Civic Life. The trial court initially denied plaintiffs' request for emergency relief because it was brought less than four weeks before the 2020 general election. Thereafter, the trial court dismissed plaintiffs' complaint concluding that plaintiffs lacked standing and that the issues raised were now moot. Plaintiffs now appeal and we affirm.

The trial court summarized the facts of this case as follows:

Plaintiffs allege in their first amended complaint that they are registered voters who live in Oakland, Macomb, and/or Livingston Counties who voted in the November 3, 2020 general election. The first amended complaint contains various allegations about the Center for Technology and Civic Life (CTCL) and how CTCL and its primary donors sought to influence the 2020 general election results by making funds available to local election jurisdictions in a targeted fashion. The funds made available by the CTCL are the focus of the complaint; more specifically, the complaint alleges that defendant should have taken action in response to local election officials' receipt of funds made available by the CTCL.

-1-

According to ¶ 13 of the first amended complaint, plaintiffs contend that this state's "voters have suffered an irreparable constitutional injury as a result of Secretary Benson's failure to supervise and regulate the conduct of the 2020 general election" as required by law. In particular, ¶ 13 continues, defendant "failed to prevent public election officials in selected jurisdictions . . . from accepting financial backing from private interests and conducting the election under the direction of those private parties." According to plaintiffs, this state's election laws do not permit local election officials in "favored jurisdictions" to receive funding from private donors.

The amended complaint alleges that the CTCL "paid millions of dollars to Michigan election authorities in predominantly urban and Democrat jurisdictions." Paragraph 32 of the complaint asserts that the donated funds were used to cover expenses incurred by local election offices during the time period of June 15, 2020, through December 21, 2020, and that the CTCL funds could be used to cover expenses such as expanded voter education and outreach as well as support for "Early In-Person Voting and Vote by Mail." Local election officials who received funds were allegedly required to submit reports to the CTCL that explained how funds were spent.

Plaintiffs do not allege that defendant received funding from the CTCL; rather, they allege that she failed to prevent local election officials from accepting funds offered by the CTCL. Count I of the amended complaint alleges that defendant's failure to prevent local election officials from accepting private funds in "targeted" jurisdictions violates the Equal Protection Clause of the Michigan Constitution. Plaintiffs assert that these targeted funding decisions amounted to a government scheme designed to "get-out-the-vote" for a favored demographic group. They allege that defendant violated their rights to equal protection by permitting officials to accept and spend private money intended to favor one group of voters over another group. Plaintiffs contend that defendant should have instructed local election officials to refuse private funds.

Count II of the amended complaint alleges that defendant violated Const 1963, art 2, § 4, which states that the Legislature shall enact laws to preserve the purity of elections. According to plaintiffs, art 2, § 4 is violated when local election officials favor one group of voters over another. Plaintiffs allege in ¶ 59 that they "are from precincts that did not have the benefit of private funding for the 2020 general election, but instead relied on state and local budgets providing taxpayer funds to pay for the cost of conducting the election." The complaint faults defendant for allowing local election officials in purportedly Democratic-leaning jurisdictions to accept and spend private funds offered by the CTCL. Plaintiffs assert that defendant's decision to "allow" such conduct diminished their voting rights and violated art 2, § 4.

Count III asserts a violation of Const 1963 art 7, § 26 and of art 9, § 18, because, according to plaintiffs, "[s]pending public funds for a private purpose in Michigan is illegal." Plaintiffs assert that, once funds are received by a public official, they are "public" and they are subject to constitutional restrictions placed

on the expenditure of public funds. In this case, plaintiffs allege that local officials who received funds from the CTCL were not permitted to spend the funds on the terms and conditions dictated by the CTCL. And, insofar as defendant is concerned, plaintiffs contend that defendant violated her duty to supervise the conduct of this state's elections by allowing and encouraging election officials to accept and spend CTCL funds.

Count IV alleges that defendant ran afoul of this state's election laws by allowing the "illegal acquisition" of ballot containers. Paragraph 70 of the complaint asserts that MCL 168.669 requires the use of public funds for purchasing "approved ballot containers" for use in a particular election precinct. According to plaintiffs, because state law requires the use of public funds for ballot containers, buying such containers with private funds is illegal. It was up to defendant, allege plaintiffs, to prohibit local election officials from using funds to purchase ballot containers and other election supplies.

Count V of the amended complaint alleges that defendant violated this state's election laws by allowing and even encouraging the use of "unapproved, insecure, unmonitored drop boxes" for ballots. Plaintiffs assert defendant did not approve the ballot containers purchased with CTCL funds and therefore their acquisition and use were illegal under MCL 168.24j and MCL 168.665. According to plaintiffs, defendant improperly allowed the use of illegal, unapproved ballot containers, and thereby breached her duties to issue instructions for the conduct of elections. In their prayer for relief, plaintiffs ask the Court to declare that defendant violated this state's Constitution by allowing the use of private funds in select jurisdictions. They also ask the Court to declare that defendant violated MCL 168.31 by allowing election officials to engage in conduct that violates the Constitution. Plaintiffs ask the Court to enjoin defendant from allowing local officials to accept funds or direction from the CTCL or any private party.

Our Supreme Court addressed the issue of mootness, in *League of Women Voters of Michigan v Secretary of State*, 506 Mich 561; 957 NW2d 731 (2020):

"It is universally understood by the bench and bar ... that a moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy. The only way a disputed right can ever be made the subject of judicial investigation is, first, to exercise it, and then, having acted, to present a justiciable controversy in such shape that the disputed right can be passed upon in a judicial tribunal, which can pronounce the right and has the power to enforce it." [*League*, 506 Mich at 580, quoting *Anway v Grand Rapids R Co*, 211 Mich 592, 610; 179 NW 350 (1920) (quotation marks and citation omitted).]

We agree with the trial court's conclusion that the issues presented in this case are moot, though for a different reason. Subsequent to the trial court's decision, as well as the parties'

briefing of the case in this Court, the Michigan electorate adopted Proposal 2 at the November 2022 general election, which amended the Michigan Constitution. Const 1963, Art II, § 4(3) now provides as follows:

> (3) A county, city, or township conducting an election may accept and use publicly-disclosed charitable donations and in-kind contributions to conduct and administer elections. The county, city, or township shall retain discretion over whether to accept or use any such donations or contributions. Charitable donations and in-kind contributions of foreign funds or from foreign sources are prohibited.

Regardless whether Michigan election law previously prohibited the acceptance and use of private funds, whether those private funds were used in a way that violated election law in the 2020 or even 2022 elections, and regardless whether defendant failed in her duty to not allow that to happen, those arguments no longer pertain to future elections. The clear and unambiguous language of the Constitution now authorizes (1) that private funds may be accepted by local election officials and (2) the local officials, not the Secretary of State, have the discretion on how to use those funds.[1] Thus, even if plaintiffs' claims were not moot before and even if plaintiffs had standing to raise those claims, plaintiffs' claims are most surely moot now and the issue of standing is no longer relevant.

Affirmed. No costs, a question of public importance being involved.


/s/ Michael F. Gadola
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney

---

[1] At oral argument, plaintiffs conceded that they are no longer contesting the legality of private funds being used by local election jurisdictions. But they do maintain that defendant has a legal duty to promulgate rules to ensure the proper use and distribution of these funds consistent with the Equal Protection Clause and that they have standing to pursue that claim which is not moot. There are two problems with plaintiffs' position in this regard. First, as we just noted, Proposition 2 vests local election officials, not the secretary of state, with discretion on how to use the funds. Thus, regardless what general authority may be vested in defendant to oversee elections, our Constitution now vests the specific authority regarding the use of private funds in local election officials. See, e.g., *Morton v Cancari*, 417 US 535, 550-551; 94 S Ct 2474; 41 L Ed 2d 290 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one . . . .:) Any claims of an Equal Protection Clause violation need to be brought against those election officials plaintiffs believe are denying protection to plaintiffs. Second, even assuming that defendant does have the authority and a duty, as plaintiffs argue, to promulgate rules regarding the use of private funds by local election officials, that may be an appropriate issue for mandamus, *League*, 506 Mich at 587, a remedy that plaintiffs do not seek.